Carroll, ⎫
Feb. 7, 1905. ⎬

## MASON v. GIBSON.

A written instrument described as a lease, but which in substance provides that A is to contribute to a business the use of his hotel and stable property, that B is to act as manager and make expenditures for furnishings and repairs, and that the net profits are to be divided, is a partnership agreement, in so far as the rights of the parties to an accounting are concerned.

A provision in a partnership agreement, that one member shall spend for furnishings and absolutely necessary repairs a sum not exceeding five hundred dollars, limits the amount which he can be compelled to contribute for that purpose, but not the sum which may be so expended; and upon an accounting, such partner is entitled to credit for money paid in excess of the stipulated sum for such repairs and furnishings as were reasonably necessary for and conducive to the success of the venture.

BILL IN EQUITY, for an accounting. Facts found, and case transferred from the June term, 1904, of the superior court, by *Stone*, J.

The defendant carried on the hotel business for one year under a written agreement with the plaintiff, the material provisions of which are as follows: " Mahlon H. Mason . . . does hereby lease, demise, and let unto James L. Gibson . . . the hotel property known as the Sunset Pavilion, . . . together with the furnishings of every kind used by him in carrying on hotel business. Also the coach, carriages, harnesses, etc., used in the livery business in connection therewith, and enough intervale land for garden purposes. To hold the same for the term of one year . . . on the following conditions: Said Gibson agrees to put into such furnishings and minor inside repairs as are absolutely necessary a sum not exceeding $500. . . . Said Mason agrees to shingle the roofs of the hotel where necessary, also the music hall, cover the roof of the piazza and provide a suitable room for laundry work, pay the taxes and insurance on the property. The water tax, electric lights, and ice to be paid by said Gibson." The profits were to be divided between the parties.

The defendant bought horses and cows and kept them in connection with the hotel, planted the garden, and used the produce from it on the hotel table. In the accounting he charged himself with the gross receipts from the hotel and stable, and was allowed the following credits; Paid for minor inside repairs and furnishings, $824; paid for a lawn-mower, $6.75; paid for a golf prize, $10; loss on sale of cows, $25; loss on sale of horses, and money paid for shoeing them and for repairing carriages and harnesses, $209.68; paid for carrying on the garden, $110.20. The receipts from the stable and garden were more than the expense of carrying them on, including the losses on horses and cows. All these expenditures were made in good faith, and were reasonably necessary for and conducive to the success of the business and the best interests of the parties. If the court could allow these credits, there is to be judgment for the defendant for costs.

*Arthur L. Foote* and *Walter D. H. Hill,* for the plaintiff.

*John B. Nash* and *James A. Edgerly,* for the defendant.

YOUNG, J. The instrument under which the business was conducted, although called a lease, is, in so far as this accounting is concerned, a partnership agreement (*Eastman* v. *Clark,* 53 N. H. 276); for by its terms the plaintiff is to contribute to the business the use of his hotel with its furnishings, make certain specified outside repairs, and pay the taxes and insurance on the property. The defendant is to manage the business, pay for the water, ice, and electric lights, and " put into such furnishings and minor in-

side repairs as are absolutely necessary a sum not exceeding $500,"
and the net profits of the business are to be divided between them.

The parties were induced to engage in the business by the expectation of making it a success. They must have known this could be done only by keeping the property in a condition to attract business. If they knew what it would cost to put the property into that condition, they could not know what it would cost to keep it there; and since keeping it there was essential to their success, it is improbable that they intended to limit the money that could be used for such purposes to $500, or any other sum less than the amount necessary for that purpose. The only evidence from which it is claimed such an intent can be found is that part of the agreement in which the defendant agrees " to put into such furnishings and minor inside repairs as are absolutely necessary a sum not exceeding $500." It is obvious that provision has no such tendency. The language of this clause, the part of the agreement in which it is found, and the fact that the only effect the omission of " a sum not exceeding $500 " has on the construction of the agreement is to change the amount of money the defendant agreed to put into the business from a definite to an indefinite amount, all tend to prove that the purpose of this clause was to limit the amount of money he could be compelled to advance for repairs—not, as claimed by the plaintiff, to limit the amount of money he could use for that purpose. As there is no other evidence which has any tendency to prove that the parties intended to limit the amount of money the defendant could use for repairs to any particular sum, it must be held that they intended him to make such repairs as were reasonably necessary for the success of the business. Since all the repairs the defendant made, including the painting, and all the things he furnished, including the bedding, lawn-mower, and golf prize, were reasonably necessary for and conducive to the success of the business, it could be properly found that the defendant should be credited with their cost.

It is obvious that the plaintiff was not injured by the ruling which gave the defendant credit for the loss on stock, money paid for shoeing horses, repairs on harnesses and carriages, and for carrying on the garden. By the agreement, the plaintiff was to receive one half of the net profit (not one half of the gross income) of the business which was to be done under it. If the agreement contemplated that the defendant should carry on the garden and stable, he was properly allowed these credits. If it did not contemplate that he should engage in such business, these credits should have been disallowed. But if they are disallowed, the gross receipts from the garden and stable should be taken from the

other side of the account.  The result would be that the sum for which the defendant must account would be less than it is under the ruling of the court, for the garden and stable were both carried on at a profit.  Therefore the order must be,

*Judgment for the defendant for his costs.*

PARSONS, C. J., and BINGHAM, J., concurred: WALKER, J., doubted.  CHASE, J., dissented, being of the opinion that, according to the true construction of the lease, the defendant is not entitled to be credited in the accounting with the cost of furnishings and repairs that were necessary merely " for the well-being of the hotel property and the comfort of the guests, and conducive to the best interests of the parties, considering the nature of the business to be done and the location of the hotel property with all of its surroundings," as was ruled in the superior court, but only with the cost, not exceeding $500, of such as were "absolutely necessary."  See *State* v. *Tetrick*, 34 W. Va. 137.